# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**CARLA HAGA,**
**Claimant Below, Petitioner**

**FILED**

November 6, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0853** (BOR Appeal No. 2054221)
(Claim No. 2018025743)

**WAL-MART ASSOCIATES, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Carla Haga, by Counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Wal-Mart Associates, Inc., by Counsel Karin L. Weingart, filed a timely response.

The issue on appeal is temporary total disability benefits. On October 31, 2018, the claims administrator suspended temporary total disability benefits and provided that Ms. Haga would receive temporary total disability benefits based on the difference in hours between what her treating provider had cleared her to work and her preinjury average weekly wage. On November 19, 2018, the claims administrator closed the claim for temporary total disability benefits. The Workers' Compensation Office of Judges ("Office of Judges") affirmed both Orders on May 1, 2019. This appeal arises from the Board of Review's Order dated August 26, 2019, in which the Board of Review affirmed the decision of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Haga was employed by Wal-Mart Associates, Inc., as a delicatessen worker. She filed an Employees' and Physicians' Report of Occupational Injury or Disease on May 24, 2018, alleging that on the same day she sustained injuries to her back and shoulder while performing heavy lifting. The physician's portion of the application was completed at MedExpress Urgent Care in Beckley, West Virginia, where she was diagnosed with an injury to the left shoulder and back as the result of an occupational injury. By Order dated May 29, 2018, the claim was held

1

compensable for sprain of ligaments of the lumbar spine, sprain of ligaments of the thoracic spine, and sprain of the left shoulder joint. The Order stated that Ms. Haga would be eligible for medical treatment only.

An MRI performed at Raleigh General Hospital on June 8, 2018, revealed a left midline disc herniation. An MRI of the left shoulder performed on June 22, 2018, was interpreted as revealing an intrasubstance tear at the myotendinous junction of the supraspinatus tendon. The MRI also revealed a partial thickness tear of the anterior leading edge of the infraspinatus tendon.

On June 27, 2018, Ms. Haga was seen by Robert Crow, M.D., an orthopedic surgeon. Ms. Haga presented with significant pain and paresthesia radiating from the left buttock through the lateral thigh, but not beyond the knee. An MRI showed multilevel spondylosis. It was reported that her past medical history included cervical neck pain, midthoracic back pain and low lumbar back pain. Dr. Crow reported an impression of strain of muscle, fascia and tendon at the lower back, initial encounter. He reported that there was no indication for surgical intervention or management. He recommended that Ms. Haga complete a course of physical therapy.

Ms. Haga was evaluated by Johnny Walker, M.D., on July 3, 2018. Dr. Walker's assessment was low back pain. He noted that he would request records from MedExpress and refer her to a surgeon for additional findings. Dr. Walker advised her to continue with physical therapy and ibuprofen for pain.

Ms. Haga was seen for an orthopedic consultation with S. Brett Whitfield, M.D., on July 12, 2018. Following an examination, Dr. Whitfield reported an assessment of left shoulder rotator cuff strain, left shoulder bursitis, and rotator cuff tendonitis with very small partial thickness intrasubstance supraspinatus tendon tear. He opined that all of the repetitive heavy lifting had caused a strain and possible tear of a very small area of the supraspinatus rotator cuff tendon. Instead of surgery, Dr. Whitfield recommended a cortisone injection. He recommended that she resume physical therapy, as weakness was often a side effect of rotator cuff strain. He stated that she would need therapy after the injection had decreased the inflammation. Dr. Whitfield provided a work note excuse for Ms. Haga for the period from July 25, 2018, to September 15, 2018.

Ms. Haga treated with Rajesh Patel, M.D., an orthopedist, on July 25, 2018. Dr. Patel's assessment was thoracic strain; lumbar strain; left shoulder rotator cuff strain; lumbar lateral recess narrowing, L3-4; lumbar degenerative disc disease, L5-S1; and thoracic disc herniation, left T9-10 and left L2-3. Dr. Patel recommended facet injections or pain management and a TLSO brace. Dr. Patel noted that Ms. Haga should remain off work until her pain subsided.

On August 9, 2018, Ms. Haga returned to Dr. Whitfield for a follow-up appointment regarding her left shoulder. An MRI revealed a left shoulder rotator cuff strain, left shoulder bursitis, and rotator cuff tendonitis with very small partial thickness intrasubstance supraspinatus tendon tear. Dr. Whitfield administered an injection of Kenalog and Lidocaine into the subacromial space.

Dr. Patel saw Ms. Haga for a follow-up examination on September 5, 2018, with regard to her low back. Since her last appointment, she was still awaiting facet injections. She reported severe pain in her lower back, left leg and hip. She also had mid back pain. Dr. Patel's assessment included thoracic strain; lumbar strain; left shoulder rotator cuff strain; thoracic disc herniation, left T9-10; lumbar disc herniation, left L2-3; lateral recess narrowing, L3-4; and lumbar degenerative disc disease. Dr. Patel noted concern for Ms. Haga's thoracic disc herniation deteriorating with time. He indicated that a new MRI would be helpful to make sure that there was no interval change to account for her increasing pain in her upper extremities and subjective weakness in her lower extremities. Dr. Patel also wanted Ms. Haga to undergo an EMG of the lower extremities to check for signs of radiculopathy. A work note excuse was provided to cover the period of September 5, 2018, to November 5, 2018.

Ms. Haga returned to Dr. Whitfield for reevaluation of her left shoulder on September 20, 2018. She reported increased pain and difficulty performing exercises. He indicated that she might be progressing into adhesive capsulitis due to her injury. He believed she needed an injection of the glenohumeral joint in order to stop the process and allow her to continue physical therapy. She was told to return after authorization was obtained for the left shoulder glenohumeral injection.

The claims administrator referred Ms. Haga to Bruce Guberman, M.D., who prepared a report dated October 3, 2018, wherein he opined that she was in need of additional medical treatment. Dr. Guberman reported an impression of chronic post-traumatic strain of the left shoulder with rotator cuff strain, bursitis, tendonitis, a small partial thickness intrasubstance supraspinatus tear, and chronic post-traumatic strain of the lumbar spine superimposed on preexisting but asymptomatic degenerative changes. There were abnormalities in her left shoulder MRI consistent with an acute injury occurring on May 24, 2018, and also accounting for her symptoms. She also had abnormalities on imaging studies of the MRIs of her thoracic and lumbar spines, which indicated preexisting degenerative changes. Dr. Guberman agreed with Dr. Patel's recommendation for injections into her lumbar spine. Dr. Guberman indicated that Ms. Haga would not be able to return to work at her prior job and could only work if her activities did not involve any use of her left arm and that she would not be required to sit for more than fifteen to twenty minutes at a time or stand for more than fifteen to twenty minutes at a time. Ms. Haga was not to sit for more than a total of four hours per day or stand for more than four hours per day.

On October 15, 2018, Ms. Haga returned to Dr. Patel for a follow-up examination. She reported that her pain was made worse by the therapy. Dr. Patel noted that the first set of injections had helped, so he recommended a second set of injections. Dr. Patel also indicated that he would refer Ms. Haga to a pain clinic to attempt some thoracic facet injections. He also requested a TLSO brace to give her back support, improve her posture, reduce her motion, and assist her with her pain. He wanted to see if the treatment would keep her functional so that she could transition back to normal activities.

A temporary Alternative Duty Assignment Sheet dated October 17, 2018, indicated that a physician's work status report from the October 3, 2018, independent medical evaluation report of Dr. Guberman stated that Ms. Haga was able to return to work with restrictions. The form further indicated that Dr. Guberman had released Ms. Haga to return to work with restrictions. By Order

dated October 31, 2018, the claims administrator suspended temporary total disability benefits and indicated that Ms. Haga would be receiving temporary partial disability benefits based upon the difference in hours between what the treating provider had cleared Ms. Haga for and her pre-injury average weekly wage. The effective date of the change was October 17, 2018. Ms. Haga protested the claims administrator's Order. By Order of the claims administrator, dated November 18, 2018, the claim was closed for temporary total disability benefits because medical evidence had not been received demonstrating that she continued to be totally disabled. Ms. Haga protested the claims administrator's decision.

Ms. Haga was seen by Barry Vaught, M.D., on December 4, 2018, after a referral from Dr. Patel for an evaluation of her low back and leg pain. Dr. Vaught administered an EMG/nerve conduction study of Ms. Haga's lower extremity, which did not demonstrate radiculopathy. He noted no neurological abnormalities. He recommended that she follow-up with Dr. Patel to discuss further evaluation and management.

On December 12, 2018, Dr. Patel noted that Ms. Haga still had severe pain in her low back and that she should not work. Dr. Patel provided Ms. Haga with a work note excusing her from work duties from December 12, 2018, to January 31, 2019. On December 28, 2018, the claims administrator approved a request from Dr. Patel for transforaminal epidural steroid injections at L4-5 and L5-S1 for treatment of Ms. Haga's lumbar spine and thoracic spine sprains to be performed on January 3, 2019. Dr. Patel provided Ms. Haga with a work note excusing her from work from February 4, 2019, to April 3, 2019.

Ms. Haga testified at deposition on February 6, 2019, that she was still experiencing pain and that she was not working. She also testified that Dr. Patel had not released her to return to work. She stated that she was scheduled to follow-up with Dr. Patel on April 4, 2019. The claims administrator authorized facet joint injections at L4-5 and L5-S1 on February 8, 2019. The procedures were to be completed on March 30, 2019.

On May 1, 2019, the Office of Judges concluded that a preponderance of credible medical evidence fails to establish that Ms. Haga is temporarily and totally disabled as a result of her compensable diagnoses. The Office of Judges found that Dr. Patel's work excuses do not state the specific reason for Ms. Haga's disability. However, based upon the diagnostic testing and other evidence of the record, the Office of Judges concluded that she suffers from issues which have not been found to be part of the compensable injury to this point. Dr. Guberman recommended that she return to work on a limited basis with restrictions. Accordingly, the Office of Judges was of the opinion that the compensable diagnoses in the claim, by themselves, do not provide a sufficient basis for Ms. Haga to be excused from work. It was determined that she failed to establish that she is unable to return to work on a limited basis as proposed by the independent medical evaluation based upon her physical limitations imposed strictly due to her compensable diagnoses in the claim. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the decision in an Order dated August 26, 2019.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. The suspension of Ms. Haga's temporary total disability benefits and closure of the

claim for temporary total disability benefits are well supported by Dr. Guberman's report. Dr. Patel's work excuse notices provide no medical rationale and no reason for why Ms. Haga cannot work at a reduced level while she is receiving treatment for her compensable conditions. The claims administrator's Orders are supported by the reliable, probative and substantial evidence on the whole record.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed

Affirmed.

**ISSUED: November 6, 2020**

**CONCURRED IN BY:**
Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison